THE PEOPLE OF THE STATE OF NEW YORK on Complaint of FRANK GHIORSI, Respondent, *v.* RAYMOND CASEY, Appellant.

Second Department, February 16, 1942.

*Irving Brawer* [*Alvin I. Perlmutter* with him on the brief], for the appellant.

*Henry J. Walsh, Assistant District Attorney* [*William O'Dwyer, District Attorney,* with him on the brief], for the respondent.

ADEL, J.  The appellant is the driver of an omnibus owned by a corporation which transports school children under a contract with the board of education.  He has been convicted of violating rule 15a of the Rules and Regulations* of the Transit Commission, a misdemeanor.  That rule states that standing passengers in an omnibus shall not exceed a number which is arrived at by application of a formula set forth in the rule.  Subdivision 14 of section 61 of the Public Service Law (added by Laws of 1934, chap. 900) empowers the Commission to adopt rules covering the safety of operation of omnibuses and provides that a violation of such rules shall constitute a misdemeanor.

The complaint herein is drawn in such language as to imply that rule 15a was adopted pursuant to the aforementioned statute, and that the rule was violated because the bus carried fifty-three persons, when under the rule it was not permitted to carry more than forty-four.  The undisputed proof is that as the bus approached its destination to discharge its passengers a police officer approached.  When the bus stopped he called the driver out, and he and the driver together counted fifty children and two teachers emerging from the bus, thereby establishing that, including the driver, there were fifty-three persons on the bus.  The officer thereupon arrested the defendant.

---

* Rules and Regulations Applicable to All Omnibuses Operating in the City of New York.—[REP.

Rule 15a reads:

" 15a. Standees.

" Standing passengers shall not be permitted in any omnibus on other than franchise routes within the City of New York in excess of 50% of the *rated adult seating capacity* of the omnibus.

" Standing passengers shall not be permitted in any omnibus when used exclusively for the transportation of school children in excess of 50% of the *rated adult seating capacity* of the omnibus whether engaged on franchise routes or otherwise.

" No omnibus shall be operated with passengers in the entrance door stepwell or so standing as to obstruct the clear view to the front or either side of the operator."

On the windshield of the bus there was a certificate of the Commission referring to twenty adults and thirty-four children. The certificate thus evidenced the Commission's rated seating capacity within the meaning of rule 15a.

From the foregoing facts it would seem that the conviction has been had on the reasoning that the presence in the bus of passengers in excess of forty-four (being thirty-four children in accordance with the rated seating capacity and ten standees in accordance with the formula) was a violation of rule 15a. The arresting officer was unable to state how many passengers were standing. He testified that because of the congestion he could not make an actual count; but in his opinion there were more than ten standees. An officer of the corporation which owns the bus testified without contradiction that notwithstanding the Commission's rated seating capacity the bus actually had on occasion seated forty-nine children.

The appellant challenges the conviction on various grounds and urges that his guilt was not proved beyond a reasonable doubt.

In my opinion the judgment of conviction should be reversed solely on the ground of the insufficiency of the proof to establish the defendant's guilt beyond a reasonable doubt, for the following reasons: Rule 15a obviously is directed to the number of standees, not to the total number of passengers in a bus. Clearly under the formula set forth in the rule any number of standees in excess of ten violates the rule. But here there is no evidence as to how many standees there were, and it does not follow as the sole or strongest inference from the fact that the rated seating capacity was thirty-four and the total number of passengers was fifty-two, that there were eighteen standees. It is obvious that more children than adults can be seated in a given area. In addition, there is testimony here that the bus on occasion had actually seated forty-nine children. For all that the present record shows, that number may have been seated during the trip which ended in the arrest

of the driver, and in that event there would have been but three standees. The police officer's testimony that there were many standees at the time the bus was coming to a stop is not of material significance. It is common knowledge that many, if not all, bus passengers will arise from their seats shortly before a bus comes to its stopping place, particularly where, as in this case, all the passengers intended to alight.

It is true that it can be argued that because fifty-two passengers were on the bus there was a violation of one of two rules, one rule relating to standees and the other to seating capacity. The complaint, however, charges only a violation of rule 15a. Indeed, so far as the record shows there is no express rule setting forth the standards for determining rated seating capacity. Such a rule exists, however, and is known as rule 15, as appears from the dissenting opinion of Mr. Justice CARSWELL herein. The defendant, however, cannot properly be convicted of a violation of a rule that is not set forth in the complaint. The defendant was called upon to meet only the charge of permitting more than ten persons to stand in the bus. That he was guilty of the charge has not been established by proof beyond a reasonable doubt. It is not necessary at this time to pass upon the other questions raised.

The judgment should be reversed on the facts, the complaint dismissed, and the fine remitted.

LAZANSKY, P. J., HAGARTY and TAYLOR, JJ., concur; CARSWELL, J., dissents and votes to affirm, with opinion.

CARSWELL, J. (dissenting). The proof established indisputably that the bus carried fifty-two passengers; that is, fifty children and two adults; and that the maximum or rated seating capacity of the bus was twenty adults or thirty-four children. This furnished a fixed, not a variable, base for computations. The permissible number of standees was fifty per cent of the adult seating capacity. The maximum number this bus was authorized to carry was forty-four children (seated and standing) or thirty adults (seated and standing). If all the fifty-two passengers had been adults there would have been an illegal excess of twenty-two. If all the fifty-two passengers had been children, there would have been an illegal excess of eight. There was an excess of six children and two adult standees above the lawfully authorized number of standees, or there was an excess of at least eight children standees if the two adults be deemed to have been seated. The conclusion that there was an illegal excess in the number of standees under rule 15a of the Rules of the Transit Commission rested not on inference but upon a simple mathematical calculation. Moreover, the officer

testified that there were more than ten standees, although how many in excess he could not say because he did not make an exact count of the excess. This testimony the trial court naturally credited in view of the undisputed total number of passengers, and we may not disturb the finding. (*Boyd* v. *Boyd*, 252 N. Y. 422, 429.)

The Transit Commission was authorized by subdivision 14 of section 61 of the Public Service Law " to adopt rules and regulations covering the *safety of operation* of all omnibuses carrying passengers for hire within the State and having a carrying capacity of more than seven persons," including " all omnibuses owned and/or operated by school districts, * * * and to examine such omnibuses and vehicles to ascertain whether such rules and regulations are being obeyed." ·Pursuant to that section rules and regulations were promulgated, including rule 15a. That rule prohibited standees on other than franchise routes " in excess of 50% of the *rated adult seating capacity* of the omnibus " and particularly in buses used for the transportation of school children. Rule 15a contemplated the existence of a rated adult seating capacity. On the trial no question was raised as to the right of the Transit Commission to rate the seating capacity of the bus. If there had been, rule 15 would have been cited to establish that right. That rule prescribes in detail the measurements to be used in determining seating capacity of buses as to children and adults, after a statement of capacity has been filed by the operator as required by rule 4 of the Rules of the Transit Commission. Rule 1 of such rules prescribes that buses are not to be operated unless they have been subjected to inspection at specified intervals and certificated as complying with the rules. The placard displayed in the bus, defendant conceded, evidenced the inspection and rating by the Transit Commission. Apart from the defendant's course on the trial, these rules being public records may be examined for the purpose of an affirmance.

Rule 15a was born of calamitous experience. It is a definite and reasonable regulation, wisely designed to promote decency and to protect the health and safety of children and adult passengers. Its terms are predicated upon an official rating of the capacity of a bus. If such a rating were inaccurate, the remedy of the bus operator or owner would have been to have it changed or annulled. Here the bus operator or owner acquiesced in the rating stated on the placard and that rating became incontestable for the purpose of this trial as the true " *rated adult seating capacity* of the omnibus." No proof of a different capacity was credited by the trial court.

Apart from the action of the Transit Commission in making the rating, the operation of the bus was conditioned, under rule 1 of the Rules of the Transit Commission, upon the bus satisfactorily meeting the inspection requirements of the Transit Commission. The operation of the bus with the placard fixing the seating capacity, following the filing by the operator, under rule 4, of claimed capacity, was a concession of the bus operator or owner that the rating thus evidenced was the true seating capacity of the bus. This premise in respect of seating capacity, therefore, existed both as a matter of lawful action of the Transit Commission and also as a consequence of the concession of the bus operator or owner. The rating, therefore, became a premise for the application and enforcement of rule 15a. The salutary and beneficent purposes of the rule should not be frustrated by a narrow construction, or by a subtle or captious appraisal of the evidence. If the majority view be accepted in respect of an assaying of the evidence, it would require a holding, if the proof revealed that seventy-five or more got out of the bus, that such evidence would not establish that with but a thirty-four seating capacity there were not more than ten standees. The consequences of such a view would be the complete thwarting and demoralizing of all enforcement efforts.

This bus was within the jurisdiction of the Transit Commission perforce subdivision 14 of section 61 of the Public Service Law, which provides: "Notwithstanding any inconsistent provision *of this chapter or of any other law,* general or special, the Commission shall have power to adopt rules and regulations covering *the safety of operation* of all omnibuses carrying passengers for hire * * *." This subdivision was enacted subsequent to the enactment of subdivision 28 of section 2 of the Public Service Law, invoked by appellant, and by its terms takes precedence over the latter statute. The carrying of the passengers was under a contract with the board of education. The bus was not carrying the children gratis, but for hire. The bus was, therefore, carrying passengers for hire within the meaning of subdivision 14 of section 61. The need for the regulation of such a bus existed to the same extent as it did in respect of " omnibuses owned and/or operated by school districts." To hold otherwise would be incongruous and ascribing purposeful futility to the Legislature. A lawful delegation of rule-making power was made by the Legislature, within a fixed standard prescribed by it, to wit, " safety of operation " (*Darweger* v. *Staats,* 267 N. Y. 290, 306), to reach a manifest evil.

Proof that the total number of passengers exceeded the authorized total of seated passengers and standees established that there was an illegal number of standees to the extent of the excess, and likewise that the bus was overcrowded to the same degree.

The credited proof established a clear violation of rule 15a, which is a misdemeanor. (Pub. Serv. Law, § 61, subd. 14.)

The judgment should be affirmed.

Judgment of a city magistrate, holding a Court of Special Sessions of the City of New York, Borough of Brooklyn, convicting the defendant, a bus driver, of driving a bus in violation of rule 15a of the Rules of the Transit Commission, reversed on the facts, the complaint dismissed, and the fine remitted.